# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00841-SCT

*KASSEY RAY AYLES, A MINOR, BY AND*
*THROUGH HER MOTHER AND NEXT FRIEND,*
*LESLEY MELTON ALLEN*

**v.**

*COLEMAN MADDOX ALLEN, III AND M. LEE*
*GRAVES*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2004 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROY O. PARKER, JR. |
| ATTORNEYS FOR APPELLEE: | MARY ANN SAWYER PETERSON |
| | FRANK THACKSTON, JR. |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/02/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1. This is an action against an attorney and his client for abuse of process and invasion of privacy. The circuit court granted summary judgment for the attorney and his client. Finding no error, we affirm the judgment of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2.    This case is before us on appeal from the Circuit Court of Coahoma County. However, the facts giving rise to this suit occurred in the context of a divorce proceeding in the Chancery Court of Coahoma County.

¶3.    Lesley Melton Allen ("Lesley") and Coleman Maddox Allen III ("Coleman") were married. Kassey Ray Ayles ("Ayles") is Lesley's child from a previous marriage. Coleman and Lesley had a child by their marriage, Coleman Maddox Allen IV ("Maddox"). The marriage between Coleman and Lesley ended in divorce, and Lesley was granted custody of Maddox. Later, Coleman filed a petition to gain custody of Maddox.[1] Lesley contested the petition. Attorney M. Lee Graves ("Graves") represented Coleman in the custody dispute over Maddox.

¶4.    During this custody contest, Coleman, through Graves, served a subpoena duces tecum on Ayles's school demanding the production of Ayles's school records, presumably to use against Lesley in the custody dispute over Maddox. The subpoena was served by Graves's secretary on Ayles's school on Friday, August 1, 2003, and directed that Ayles's school records be given to Graves within ten (10) days. However, the school produced Ayles's records to Graves's secretary immediately upon receipt of the subpoena.

¶5.    The following Monday, August 4, 2003, Graves mailed notice of the subpoena duces tecum to Lesley's attorney, Bill Luckett ("Luckett"),[2] who received Graves's letter on August

---

[1]Lesley's custody of Ayles was never at issue.

[2]The notice of the subpoena duces tecum consisted of a letter from Graves to Luckett sent U.S. mail, with a copy of the subpoena enclosed.

7, 2003, and in reply sent a demand letter by facsimile, requesting that Graves explain why he had not provided Lesley with notice prior to issuing the subpoena, and suggesting that abuse of process may have occurred. By letter dated August 11, 2003, Graves responded that the subpoena was issued in good faith, the school had made a mistake in giving the records to his secretary, and that neither he nor the school had intended to subvert any process. Graves also stated that he would provide Luckett with a copy of Ayles's records if Luckett wished him to do so, but otherwise would hold them until the chancellor ruled on the matter.

¶6.     On January 7, 2004, Ayles, by and through her mother, filed this suit in the Circuit Court of Coahoma County against Coleman and Graves for abuse of process and invasion of privacy. Coleman and Graves filed a Motion to Dismiss/Motion for Summary Judgment, which stated that Graves was acting individually and on behalf of Coleman and that the complaint should be dismissed as to both Graves and Coleman for failure to state a claim upon which relief could be granted pursuant to pursuant to M.RC.P.12(b). In the alternative, Graves requested that his motion to dismiss be treated as a Rule 56 motion for summary judgment. Ayles filed a Response to the Motion to Dismiss/Motion for Summary Judgment. Both parties filed supporting affidavits.

¶7.     The circuit court entered an order treating Graves's motion to dismiss as a motion for summary judgment and granting judgment as a matter of law in favor Graves. The trial court further ordered that because Ayles's causes of action against Coleman arose solely from acts and omissions of Graves, there existed no issue of fact with respect to the claims against Coleman and entered judgment as a matter of law in favor of Coleman. Ayles now appeals and

3

asks us to hold that the circuit court improperly granted judgment as a matter of law in favor of Coleman and Graves.

## ANALYSIS

¶8.    Ayles says summary judgment was improperly granted by the circuit court.[3]    This Court reviews summary judgments de novo. ***Hardy v. Brock***  826 So.2d 71, 74 (Miss. 2002).   The evidence must be viewed in the light most favorable to the party against whom the motion has been made. ***Newell v. Hinton***, 556 So.2d 1037, 1041 (Miss. 1990).   This Court will determine whether there exists a genuine issue of material fact which could preclude entry of summary judgment. ***Hardy,*** 826 So.2d at 74.

¶9.    Ayles asserts that Graves committed the torts of abuse of process and invasion of privacy by intentionally subverting the subpoena process to obtain privileged school records of a minor, specifically by failing to give notice to Lesley's attorney prior to serving the subpoena.   Viewing the facts in the light most favorable to Ayles, we must determine whether she has shown that a genuine issue of material fact exists as to Graves's liability for the torts of abuse of process and/or invasion of privacy.

*Abuse of Process*

¶10.    This Court has defined abuse of process as follows:

---

[3]In her brief on appeal, Ayles makes no argument as to Coleman's actions or liability.  Ayles's brief only makes arguments as to the actions and liability of attorney Graves.  However, Ayles concludes her brief with the statement that the trial court improperly granted the motion to dismiss/summary judgment as to both Coleman and Graves.  Thus, we will primarily address the summary judgment in favor of Graves, and only briefly dispose of the appeal as it relates to the judgment as a matter of law in favor of Coleman.

4

> The action of abuse of process consists in the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained.

*Williamson ex rel. Williamson v. Keith,* 786 So. 2d 390, 393-94 (Miss. 2001) (quoting *State ex rel. Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975) (footnote omitted)). Thus, the three elements of abuse of process are: (1) the party made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process. *McLain v. West Side Bone & Joint Ctr.*, 656 So. 2d 119, 123 (Miss. 1995) (citing *Turner*, 319 So. 2d at 236). This Court has stated that the crucial element of this tort is the intent to abuse the privileges of the legal system. *McLain*, 656 So. 2d at 123.

¶11. To overcome summary judgment, Ayles must show the existence of each element of abuse of process. *Keith*, 786 So. 2d at 394. This she has failed to do.

¶12. The first element of the tort of abuse of process is illegal use of a legal process. Attempting to show that Graves illegally used the subpoena process, Ayles alleges various violations of the Mississippi Rules of Civil Procedure. Thus, it is not so much the "legal process" (subpoena) that Ayles complains of, as the procedure employed to serve it.

¶13. Ayles submits that Graves's failure to give notice to Lesley Allen prior to issuing the subpoena on the school was a violation of M.R.C.P. 45(d)(2)(A). M.R.C.P. 45(d)(2)(A) addresses subpoenas for production or inspection, and states, in pertinent part:

> Unless for good cause shown the court shortens the time, a subpoena for production or inspection shall allow not less than ten days for the person upon whom it is served to comply with the subpoena. A copy of all such subpoenas shall be served immediately upon each party in accordance with Rule 5.

5

The first part of the rule providing at least ten days for compliance was not violated since the rule does not prevent compliance within a shorter time. The second requirement of the rule is that a copy of the subpoena be "served immediately" upon all parties. The subpoena was served on Friday, and Graves sent notice of the subpoena to Lesley on August 4, 2003, which was the following Monday.

¶14. In his Findings of Fact and Conclusions of Law, the chancellor held that Graves mailed notice of the subpoena on the next business day after it was served, and this was appropriate and timely. Ayles argues that Graves did not "immediately" serve a copy of the subpoena upon Lesley and, therefore, violated Rule 45.

¶15. We have not previously interpreted the term "immediately" in the context of M.R.C.P. 45. The comment to the rule states as follows:

> Paragraph (d)(2)(A) requires that the party serving a subpoena for production or inspection must serve a copy of the subpoena upon all parties to the action immediately after it is served on the person to whom it is directed. Thus, the rule does not contemplate that the party serving a subpoena may delay serving a copy of the subpoena on the other parties to the action until 10 days before the date designated for the production or inspection. A failure to immediately serve a copy of the subpoena on the other parties may be grounds for extending the time for compliance with the subpoena. Service must be made in accordance with Rule 5.

M.R.C.P. 45 cmt. The comment appears to contemplate a subpoena with a compliance date which is more than ten days into the future. For instance, where the party served with the subpoena has 30 days to comply, the comment cautions the party serving the subpoena against waiting 20 days ("10 days before the date designated for the production"), and then serving a

6

copy of the subpoena on all parties. The comment does not address circumstances such as those before us today where a subpoena is served with ten days allowed for compliance.[4]

¶16. The comment to the rule provides that the service upon "the other parties . . . must be made in accordance with Rule 5." Service under Rule 5 is accomplished by placing the notice in the mail. Thus, were we to hold that "immediately" means at least the same day, the result in this case would be no different. Had Graves strictly complied with the requirement to "immediately" serve a copy of the subpoena by placing it in the mail on Friday, August 1, the notice still would not have been delivered until after the production, since the records were produced immediately. Graves served the subpoena on Friday and immediately obtained the records. Since he already had the records, his decision of whether to mail notice that same day or on the following Monday could not have been motivated by a desire to gain any advantage.

¶17. Furthermore, whether Graves's notice constituted "immediate" service under Rule 45 does not determine whether the subpoena process was illegally used, which is what the law requires to satisfy the elements of abuse of process. Rule 45 in its current form allows a party to obtain records prior to any actual notice to the other parties. Since Graves gained no advantage by waiting until Monday to mail the notice, his decision to mail the notice on Monday rather than Friday cannot serve as the basis for a claim of abuse of process.

---

[4]Since it appears that neither the text of Rule 45 nor its comment contemplate or address situations where compliance with a subpoena duces tecum is immediate, this matter shall be referred to and reviewed by the Rules Committee of this Court.

¶18.    Ayles also argues that Graves was required to hand-deliver the notice to Luckett under M.R.C.P. 5(b). This argument is also without merit. Service is allowed by mail under the plain language of M.R.C.P. 5(b).[5] Graves's notice by mail was permissible, and thus, not illegal.

¶19.    Ayles also argues that Graves illegally used the subpoena process because her school records were privileged and therefore outside the scope of discovery under M.R.C.P. 26(b)(1).[6] However, Ayles fails to explain how the school records constitute a "privileged" matter under Rule 26.

¶20.    Ayles makes additional arguments under the Mississippi Rules of Civil Procedure, various Rules of Professional Conduct, and the Uniform Rules of Circuit and County Practice, none of which demonstrate illegal use of the subpoena process and all of which are wholly without merit. Ayles has not shown that a genuine issue of material fact exists as to whether Graves illegally used the subpoena process and, therefore, has not satisfied the first element of the tort of abuse of process.

---

[5]M.R.C.P. 5(b) states, in pertinent part:

Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such attorney unless service upon party himself is ordered by the court. Service upon the attorney . . . shall be made by delivering a copy to him . . . **or by mailing it to him** at his last known address . . . Delivery of a copy within this rule means: handing it to the attorney or the party; or leaving it as his office with his clerk or other person in charge thereof . . . in a conspicuous place therein . . . **Service by mail is complete upon mailing**.

(emphasis added.)

[6]M.R.C.P. 26(b)(1) states, in pertinent part: "Parties may obtain discovery regarding any matter, **not privileged**, which is relevant to the issues raised by the claims or defenses of any party." (emphasis added).

¶21. To overcome the judgment entered in favor of Coleman and Graves, Ayles is required to show the existence of each element of the tort of abuse of process. *Keith*, 786 So. 2d at 394. Because Ayles has failed to show the existence of the first element of the tort, we need not address the remaining elements of the tort, and Ayles's claim regarding abuse of process must fail.

¶22. In so ruling, we are guided by our previous decision in *Keith* where, this Court affirmed summary judgment in favor of an attorney who was sued for abuse of process when he failed to notify opposing counsel that he had issued a subpoena for a minor's medical records. We held that "[t]he existence of improper procedure does not, by itself, give rise to an abuse of process claim." *Id.* at 395.

¶23. The facts giving rise to *Keith* were as follows. Williamson was a special education student in Madison County with a cochlear implant (an assistive hearing device). Williamson lost some components of her cochlear implant, and demanded reimbursement from the school under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-87. 786 So. 2d at 392-93. The School District refused to compensate her and hired attorney Keith to represent the District in a due process hearing in the matter. Keith then issued a subpoena for Williamson's medical records and served it upon the clinic where Williamson's implant procedure was performed, and the clinic complied. *Id.* at 392-93. Keith never served Williamson or her attorney with notice of the subpoena. *Id.* at 393. The due process hearing never took place because the parties entered into a settlement agreement, and it was not until months later that Williamson learned of the subpoena. *Id.* Williamson then sued Keith for both abuse of process and invasion of privacy. The trial court granted summary judgment in

9

favor of Keith, and this Court affirmed. *Id.* at 397. In affirming summary judgment on the abuse of process claim, this Court stated:

> The statements offered by [Williamson's witnesses] amount to nothing more than statements of belief that Keith intentionally failed to provide the copies to the appropriate parties, but do not provide any "significant probative evidence" to show the existence of a triable issue of fact . . . Ulterior motive by Keith should not be found simply because he did not follow proper procedure. The existence of improper procedure does not, by itself, give rise to an abuse of process claim.

*Id.* at 395 (citations omitted).

¶24. The evidence Ayles has presented to this Court to show an issue of material fact consists of Lesley's affidavit and the letters exchanged between Graves and Luckett regarding the subpoena. In her affidavit, Lesley stated that without her knowledge, Graves subpoenaed her daughter's school records and that she "believed" her ex-husband, Coleman, had directed Graves to do this so he could gain leverage in the custody dispute over Maddox. Lesley's belief that her husband told Graves to subpoena the records is not evidence that Graves illegally used the subpoena process. The letters between Luckett and Graves indicate the dates on which the subpoena and notice thereof were served. These letters do show that Graves failed to serve notice of the subpoena immediately under M.R.C.P. 45, but as this Court held in *Keith*, Graves's failure to follow correct procedure does not rise to the level of abuse of process. The trial court properly granted judgment in favor of Coleman and Graves as to the abuse of process claim, and we affirm that portion of the trial court's judgment.

*Invasion of Privacy*

¶25. The tort of invasion of privacy is composed of four separate sub-torts: (i). the intentional intrusion upon the solitude or seclusion of another; (ii). the appropriation of

10

another's identity for an unpermitted use; (iii). the public disclosure of private facts; and (iv). holding another to the public eye in a false light. **Keith**, 786 So.2d at 396 (citing **Candebat v. Flanagan**, 487 So.2d 207, 209 (Miss. 1986); **Plaxico v. Michael**, 735 So.2d 1036, 1039 (Miss. 1999) (plurality opinion)). The case before us today involves the third sub-tort, public disclosure of private facts.

¶26. Ayles says that, that by handing her school records over to Graves and his secretary, the subpoena effectively disclosed her school records to the public and her privacy was invaded. Again, our opinion in **Keith** guides our decision today. In **Keith**, the attorney received the subpoenaed medical records, and then only his legal assistant and the School District's Special Education Director had access to them. **Keith**, 786 So. 2d at 396. Williamson did not submit any evidence that her medical records were published or disclosed to the public. **Id.** This Court affirmed summary judgment in favor of Keith because Williamson had not shown "publicity" as required by **Young v. Jackson**, 572 So. 2d 378, 382 (Miss. 1990). 786 So. 2d at 396.

¶27. In **Young v. Jackson**, this Court adopted the definition of the tort of public disclosure of private facts provided by Restatement (Second) of Torts § 652D (1977), which states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
> (a) would be highly offensive to a reasonable person, and
> (b) is not of legitimate concern to the public.

**Young**, 572 So.2d at 382. In **Keith,** this Court relied on Comment a to this Restatement section, which states that for purposes of this tort, publicity

> means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain

11

to become one of public knowledge . . . Thus it is not an invasion of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons.

*Keith*, 786 So. 2d at 396.

¶28. Under the precedent of *Keith*, Ayles has not established the existence of a genuine issue of material fact as to whether Graves committed the tort of invasion of privacy. Upon receiving Ayles's school records, Graves placed them in a file and did not disclose them to his client or the court. Further, he never sought to introduce them in any proceeding and did not discuss them during settlement negotiations. Ayles has not presented any evidence that Graves publicized her school records. We hold that judgment was properly granted in favor of Graves on this issue.

¶29. We further hold that the judgment as a matter of law in favor of Coleman was also properly granted. As the circuit court held below, Ayles's causes of action against Coleman arose solely from the acts and omissions of Graves, and Ayles does not dispute this on appeal. Finding no liability on the part of Graves and that judgment in his favor was properly granted, we therefore also find that judgment as a matter of law in favor of Coleman was also properly granted.

## CONCLUSION

¶30. For these reasons, the circuit court's order granting judgment as a matter of law in favor of Coleman Maddox Allen, III, and M. Lee Graves is hereby affirmed.

¶31. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**